IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-285-CJP[1] |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Gregory Lee, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Lee applied for benefits in August 2011, initially alleging disability beginning on January 1, 2007. At the evidentiary hearing, he amended the alleged onset date to January 1, 2011. (Tr. 22). After holding an evidentiary hearing, ALJ Theodore W. Grippo denied the application for benefits in a decision dated December 10, 2013. (Tr. 22-31). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 11.

remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

For his sole point, plaintiff argues that the ALJ erred in ignoring three lay witness statements.[2]

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3]  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to

---

[2] Defendant suggests that plaintiff might have intended to raise an issue as to the weight afforded to Dr. Bali's opinion by his discussion of that opinion in the facts section of his brief.   See, Doc. 22, p. 9. The Court disagrees.   Plaintiff did not present any argument about the ALJ's weighing of Dr. Bali's opinion, and the Court therefore declines to address that issue.

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at

step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).  *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether Mr. Lee was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).  This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).  However,

while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Grippo followed the five-step analytical framework described above. He determined that Mr. Lee had not been engaged in substantial gainful activity since the date of his application, and he was insured for DIB through December 31, 2012.[4]

The ALJ found that plaintiff had one severe impairment, epilepsy, and that this impairment did not meet or equal a listed impairment.

The ALJ found that Mr. Lee had the residual functional capacity (RFC) to perform work at all exertional levels, limited to no climbing of ladders, ropes or scaffolds; only occasional climbing of ramps or stairs; and less than moderate exposure to workplace hazards.  Based upon the testimony of a vocational expert, the ALJ found that plaintiff was unable to do his past work.  However, he also concluded that he was not disabled because he was able to do other jobs which exist in significant numbers in the local and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.

---

[4] The date last insured is relevant only to the claim for DIB.

1.   **Agency Forms**

Plaintiff was born in 1960 and was almost 51 years old on the amended alleged onset date.   (Tr. 148).   He had worked as a construction laborer.   He said he stopped working on October 1, 2010, because of his condition.   (Tr. 151-152).

In a Function Report submitted in September 2011, Mr. Lee stated that the medicine he was taking for seizures made him tired and it was hard to stay alert. He stated that "Because of my seizures no one wants to hire me."   (Tr. 169).

2.   **Witness Statements**

Plaintiff's brother submitted a Seizure Description Form.   He stated that he witnessed one seizure.   He did not give the date of that seizure.   He stated that the last time the claimant had a seizure of which he was aware was on September 15, 2011, six days before he completed the form.   (Tr. 166).

Plaintiff's nephew submitted a similar form stating that he witnessed one seizure in July 2006.   (Tr. 167).

Plaintiff's friend stated that she witnessed four seizures, in December, February, April and May.   Her form was dated September 22, 2011.   (Tr. 168).

Plaintiff's brother and friend stated that plaintiff had more than one seizure per month.   His nephew did not answer that question.

3.   **Evidentiary Hearing**

Mr. Lee was represented by an attorney at the evidentiary hearing on August 22, 2013.   (Tr. 39).

Plaintiff testified that he had seizures as often as every three weeks, but, since his medicine was "straightened out," he did not have them as often.   His last

seizure was about two months ago, and it was a "light one." (Tr. 43).

His medications made him feel weak and tired. (Tr. 44).

A vocational expert also testified. The ALJ asked him a hypothetical question that comported with the ultimate RFC findings. He testified that the hypothetical person could not do plaintiff's past work, but he could do other jobs such as box bender, mold filler, and hand packager. The VE also testified that missing two days of work a month would be "twice the amount tolerated in competitive employment." (Tr. 48-50).

3.  **Medical Records**

In view of the sole point raised, the Court will not set forth a detailed review of the medical records.

Mr. Lee was initially seen in the emergency room in March 2008 after having a seizure in the shower. He awoke to find the hot water running. He suffered second degree burns on his feet. He was started on Tegretol. (Tr. 367). He continued seeing doctors in the Neurology Clinic at Barnes Jewish Hospital in St. Louis, Missouri, for management of his seizures. In March 2009, a doctor there noted that he had a normal brain MRI and a routine EEG that showed mild generalized slowing. He had no known seizures since starting Tegretol a year earlier. He had no side effects from the medication. (Tr. 351).

In March 2010, plaintiff told the doctor that he had no known seizures for the past two years. (Tr. 395). The next visit was in July 2011. His dosage of Tegretol had been reduced in the interim, and he reported that he had three full-blown seizures and also some "light seizures." His Tegretol was increased.

(Tr. 385-386). In March, 2012, he reported that he had a seizure every month or so, and some of them had been witnessed by his girlfriend. He asked the doctor to fill out disability papers because "no one is hiring him to work in construction jobs with his ongoing seizures." His Tegretol level was to be checked. (Tr. 377). When he returned in July 2012, the doctor noted that he had been prescribed Keppra along with Tegretol. He had not had any more big seizures where he lost consciousness. He had one episode where his body felt numb and he had to sit down. He had no side effects from his medications. The doctor increased the dosage of Keppra. (Tr. 369-370).

The record before the ALJ contained notes from three more visits. In September 2012, plaintiff said he had no seizures, but had two episodes of shaking of his arms and legs, with no loss of consciousness. His dosage of Tegretol was increased. (Tr. 420-421). Two months later, he reported only two episodes of "bilateral arm stiffening" in the interim. The only medication side effect was mild drowsiness. The doctor noted that he was "well-controlled" on the increased dosage of Tegretol. He was to continue on his medications. (Tr. 413-413). At the last visit in March 2013, Mr. Lee reported that he had "no spells" since the last visit over six months ago. He was to continue on his medications. Seizure precautions were lifted. (Tr. 402-403).

A record of an additional visit in September 2013 was submitted to the Appeals Council after the ALJ issued his opinion. See, Tr. 430-439. These records cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first

time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994). See also, *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

### Analysis

Plaintiff's sole point concerns the ALJ's failure to discuss the witness statements submitted by his brother, nephew and friend. He argues that these "statements are consistent with the claimant's allegations of having more than one grand mal seizure per month." See, Doc. 16, p. 5.

The ALJ found that plaintiff's claim as to the frequency of his seizures was not credible because, among other reasons, it was not supported by the medical records. Notably, plaintiff does not challenge the ALJ's credibility determination as to his own testimony. Rather, he argues that the ALJ erred in failing to consider and assess the credibility of the witnesses' statements.

It is true that the ALJ is supposed to consider all of the evidence, including statements submitted by third parties. 20 C.F.R. §404.1529(c)(3). However, the ALJ is not required to evaluate in writing every piece of evidence. In particular, he is not required to explicitly discuss a third party statement where the statement is not a separate line of evidence, but only serves to corroborate the plaintiff's testimony and is therefore "essentially redundant." *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996); *Carlson v. Shalala*, 999 F.2d 180, 182 (7th Cir. 1993).

The ALJ found that plaintiff's allegations were not credible. Plaintiff does not challenge that finding. Because the witnesses' statements simply corroborated

plaintiff's allegations, the ALJ did not err in failing to explicitly discuss and weigh the statements.

Even if the failure to discuss the statements could be considered to be an error, it was harmless.  The statements added nothing material to the evidence.  Plaintiff's nephew claimed to have witnessed only one seizure in 2006, years before plaintiff claimed that he became disabled.  His brother claimed to have witnessed one seizure, but he did not give the date.  He said he was aware that plaintiff had a seizure in September 2011, but did not say how he came by this knowledge.  Plaintiff's friend said she witnessed four seizures between December 2010 and May 2011.  None of the witnesses claimed to have witnessed plaintiff having more than one seizure per month.  To the extent that the witnesses relied on plaintiff's own reports for their assertion that he had more than one seizure per month, the statements are simply redundant and not persuasive.

"A grand mal seizure — also known as a generalized tonic-clonic seizure — features a loss of consciousness and violent muscle contractions." http://www.mayoclinic.org/diseases-conditions/grand-mal-seizure/basics/definition/con-20021356, visited on June 20, 2016.  In his review of the medical evidence, the ALJ pointed out, correctly, that plaintiff's treating physicians recorded that plaintiff had no grand mal seizures at all between March 2012 and May 2013.  See, Tr. 27.  The witnesses prepared their statements in September 2011, at a time when plaintiff's medications were being adjusted.  See, Tr. 377, 385-386.  In view of the medical evidence that plaintiff had no grand mal seizures at all between March 2012 and May 2013, it is inconceivable that the unsupported witness

statements from September 2011 would have any impact on the ALJ's decision.

An ALJ's error is harmless where, having looked at the evidence in the record, the court "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). In *McKinzey*, the ALJ erred in not discussing the opinion of a state agency physician. However, the Seventh Circuit held that the error was harmless because "no reasonable ALJ would reach a contrary decision on remand" based on that opinion. *McKinzey, Ibid.* For the same reason, the failure to discuss the witness statements, if it was error at all, was surely harmless.

## Conclusion

After careful review of the record as a whole, the Court finds that plaintiff has not identified any error of law committed by the ALJ, and has not demonstrated that the ALJ's decision lacked substantial support. Accordingly, the final decision of the Commissioner of Social Security denying Gregory Lee's application for disability benefits is **AFFIRMED**.

The Clerk of Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   June 20, 2016.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
